HEARD APRIL TERM, 1873.

## MANUFACTURING CO. *vs.* PRICE.

A. conveyed lands to B., but, by mistake, part of the tract intended to be conveyed was omitted from the conveyance, and B. mortgaged the whole tract to A. to secure the purchase money. B. afterwards obtained a decree against A. for a conveyance to B., by the Commissioner in Equity, of the omitted part, but the conveyance was made by the Commissioner in Equity, not to B,, but to C., who claimed as assignee of B., and C. conveyed to D.: *Held,* That, as against D., the part conveyed to him was charged with the mortgage debt.

One who holds by title derived from the mortgagor subsequent to the mortgage, is not concluded by a decree for foreclosure to which he was not a party.

BEFORE VERNON, J., AT SPARTANBURG, SPRING TERM, 1870.

This was an action of trespass to try title by the South Carolina Manufacturing Company, plaintiff, against J. Perry Price, defen-

dant. The case is stated in a report made, by consent of counsel, as follows:

"Upon the trial of this case it appeared that one Abijah Phelps, in July, 1848, conveyed to one Esau Price a tract of land "whereon the said A. Phelps now lives, including the plantation and mill on Thickety Creek," " containing 464 acres, more or less," and at the same time Price, in order to secure the purchase money, executed a mortgage of the same to the grantor, describing it as " all that tract of land whereon the said A. Phelps now lives, lying on main Thickety Creek, in the State and District aforesaid, bounded by lands of F. Guthrie, James Richards, and others, containing 464 acres, more or less." In the deed the land was described by metes and bounds, while in the mortgage the description is as above stated. Some time after the execution of the conveyance, it was discovered that 100 acres, which was intended to be included in the deed, had been left out by mistake, and that 100 in an opposite direction had been included. Some time in the year 1855 Esau Price filed a bill in the Court of Equity, against Phelps, to have the mistake corrected, and to perfect his title to the 100 acres in question. Upon the hearing of the case, in June 1855, the Court directed its Commissioner—Phelps having left the country—to convey the 100 acres to Price. It further appeared that the present plaintiffs held a judgment against Price for some $396, to satisfy which a ca. sa. was issued in October, 1855, and Price arrested. Being so arrested, Price applied for the benefit of the Prison Bounds Act, and in his schedule, among other things, was " 366 acres of land, the Mill Tract—100 acres of same land left off—the deed from Phelps to defendant." On the 12th of November, 1855, Price assigned all his estate and effects mentioned in schedule to S. Bobo. Upon Mr. Bobo exhibiting to the Commissioner the said assignment, that officer, on the 22d of December, 1857, conveyed to him the 100 acres which he was directed by the decree of the Court of Equity to convey to Esau Price, and on the 13th of February, 1858, Mr. Bobo conveyed the same to the plaintiffs. Upon this title the plaintiffs brought an action of trespass to try title, against the defendant, J. Perry Price, which was tried at Fall Term, 1859, and a verdict rendered for plaintiffs; the defendant appealed, and the Appeal Court, in                186  , decided that the Commissioner had no right to convey to Bobo, when the decree directed him

to convey to Esau Price, and set aside the verdict. After this decision of the Appeal Court Mr. Bobo filed a petition in the Court of Equity, and procured an order to have the title for the said 100 acres made to him, and on the 22d day of August, 1861, the Commissioner made him title, and on the            day of 1861, he conveyed to plaintiffs. This constituted plaintiff's title in the present case. On the 14th day of April, 1856, Moses Webber, a surety upon the bail bond of A. Phelps, who had run away from the country, having been compelled to pay, in 1855, a large sum of money, to wit, the sum of $494.24, to Willis Smith, a judgment creditor of Phelps, by reason of Phelps' failure to satisfy the conditions of his bond, filed a bill in equity against Willis Smith, Benjamin Price and Esau Price, to have the mortgage given by Esau Price to Phelps foreclosed, and claiming to be subrogated to the rights of the mortgagee, the mortgage, as well as the notes for the purchase money, having been assigned to Willis Smith under an attachment taken out by him against A. Phelps, and judgment already obtained upon said notes in favor of Smith. The said bill set forth, further, the fact that the said 464 acres of land had been twice sold by the Sheriff as the property of Esau Price, under the execution in favor of Smith; that at the first sale, in December, 1855, Benjamin Price became the purchaser, but refused to comply with the terms "on account of the mortgage to Phelps, and that at the second sale, on first Monday in January, 1856, it was bid off by some parties who transferred their bid to Benjamin Price, who paid the purchase money, which was applied to older executions than Smith's but junior to the mortgage." In his answer, as defendant in this bill, Esau Price sets up no claim for himself or for Mr. Bobo, one of the counsel, who files his answer, to the 100 acres which had been previously ordered by a decree of the Court to be conveyed to Esau Price, but states therein, "that the Mill Tract of land was sold to his co-defendant, Ben. Price, and that he bid it off for a sum less than its value; that he had, in fact, purchased the same land from your respondent, at the sum of eighteen hundred dollars, and refused to pay for it, on account of these claims;" meaning, as he proved on this trial, the failure to cover this one hundred acres by the Phelps deed, and upon hearing this case, the Court of Equity made the following decree, to wit:

"'On hearing the pleadings, arguments and evidence, and no objection being made thereto, it is ordered, on motion of Dawkins,

solicitor for plaintiff, that the defendant, Benjamin Price, pay to the plaintiff the sum of four hundred and thirty-one dollars and eighty-one cents, with interest from the 5th day of November, 1855, on or before the sixth day of December next, and on his failure to do so, that the mortgage mentioned in the pleadings be foreclosed, and the tract of land containing 464 acres, more or less, and known as the Mill Tract, being first described in the mortgage, and now owned and possessed by the said Benjamin Price, be sold by the Commissioner on the first Monday in January next thereafter, for cash, and after paying off the demands of the plaintiff, that the surplus, if any, be paid to the defendant, Benjamin Price—the plaintiff and the defendant, Benjamin Price, each to pay one-half of the whole costs of the case.

JOB JOHNSTON.' "

June 7th, 1856.

"Under this decree the land was sold on the first Monday in January, 1857, and was bid off by Benjamin Price, for the sum of $700.00, who received title from T. O. P. Vernon, Commissioner, on the 5th day of same month. Benjamin Price afterwards conveyed to the defendant, J. Perry Price.. Upon the various proceedings in equity, and this title, the defendant relied. The questions presented by this case, are :

" 1st. Whether the 100 acres left out of the deed from Phelps to Esau Price, by mistake, and previous to the proceedings for a foreclosure of the mortgage ordered by the Court of Equity to be conveyed to Esau Price, were sold and conveyed to Benjamin Price, under whom defendant claims title under the decree of foreclosure made by Chancellor Johnston.

" 2d. Whether notice of want of title in Esau Price, and the *alleged* fact that leaving out the 100 acres, the remainder of the land, was sufficient to satisfy the mortgage, does not limit the defendant to the 364 acres, covered by the terms of the deed from Phelps to Esau Price.

" The Court instructed the jury that the order of the Court of Equity, for the conveyance of the 100 acres left out by mistake in the original deed from Phelps to Esau Price, enured to the benefit of the mortgagee, and those claiming under him, and that the plaintiffs were concluded by the proceedings in equity, in which Moses Webber was complainant and Esau Price, and others, defendants,

from disputing the title of defendant, derived from the sale made under the decree in said case. Under these instructions the jury found for the defendant."

The plaintiffs appealed and moved this Court for a new trial, the 2d and 3d grounds of appeal being as follows:

2. Because the presiding Judge erred in charging the jury that the 100 acres not embraced in the Phelps deed, by mistake, enured to the benefit of the mortgagee, notwithstanding there was enough land left and embraced in the mortgage to pay the balance due upon it.

3. Because the presiding Judge erred in charging that the plaintiffs were concluded by the decree in the Webber case from disputing the title of defendant.

*Bobo & Carlisle*, for appellant:

Esau Price purchased of Phelps in July, 1848, taking a deed, leaving out of the purchase 100 acres by mistake. Some time thereafter Esau Price bargained the land to Ben Price for $1,800, and then proceeded in the Court of Equity to perfect his title, and at June Term, 1855, the Court ordered the Commissioner to convey the 100 acres to Esau Price, who assigned to S. Bobo, 12th November, 1855. In December, 1855, the Sheriff levied upon Esau Price's land under Smith's execution, and Ben Price became the purchaser. At June Term, 1856, the Court of Equity ordered the mortgage to be foreclosed, *containing 464 acres, more or less, known as the Mill Tract, now owned and possessed by the said B. Price.* In January, 1857, the land was sold under this order and purchased by Ben Price at $700, but to satisfy a debt of $494.24 to Webber as surety to Phelps, to whose interest he claimed to be subrogated.

We admit that the whole land was bound for the purchase money, and if it were necessary that the whole tract should be sold to pay the purchase money, it was in Phelps' power to have it sold. But we say it was not, in fact, sold, nor was it necessary that it should be. It was not, in fact, sold; the Court ordered the land to be sold which at the *time was owned and possessed by Ben. Price.* It will be remembered that Ben Price had, in December, 1855, purchased at Sheriff's sale the Mill Tract. Esau Price had no levyable title, (indeed he had no title whatever) to this land at that time, for, in

November preceding he had assigned his right to a deed for it to S. Bobo, which deed was afterwards made to him by order of the Court. What land, then, did Ben Price *own and possess* at that time? The answer is plain, that it was so much as the Sheriff had sold under his levy, and no more. This is confirmed from the amount it was bid off at ($700) when the purchaser had himself a short time before purchased the whole tract at $1,800, and refused to perfect the purchase because he knew that Esau had no title to this 100 acres. We therefore say that this 100 acres not only was not sold either by the Sheriff or Commissioner in Equity, but that Ben Price, the purchaser, knew it. Ben Price, therefore, purchased at both sales with a full knowledge of all the facts. A party purchasing with a full knowledge of the legal or equitable title of another will not be allowed to protect himself against such claims, but his title will be postponed to theirs.—1 Story Eq., 383. The question of title to this 100 acres was at the time settled in the Court of Equity, and a case was pending in that Court to perfect the title in S. Bobo. All persons are presumed to know what is going on in the Courts, and therefore actual notice is not necessary, (1 Story Eq., 393 and note 2,) though in this case Ben Price had actual notice.

Again the mortgagee had abundance of means to secure the purchase money in the 364 acres, and when a party has a lien on two funds or estates to secure a debt, and another has a junior lien on one of them, he is bound to seek satisfaction on the unincumbered estate in the first instance.—1 Story Eq., 588–9, and notes.

The question whether the mortgage covered more land than the deed is one that should have been submitted to the jury. On the former trial it was submitted to a jury, who found a verdict for the plaintiff. There is no doubt but that both were intended to cover the same land, and it would be passing strange if Price would give Phelps a mortgage of Phelps' own land—he had no right to mortgage it, nor had the Sheriff any right to sell it as Esau Price's land. Ben Price, under whom defendant holds in all of his purchases, knew that Esau Price had no title, refused to pay for it on that account, and yet he is allowed to purchase and speculate on Esau Price and his creditors, by first holding out that Esau has no title and then get it for a song.

*Evans & Bomar*, contra:

The defendant relies upon the following propositions and authorities :

1. That the mortgage, by its terms, covered the whole 464 acres which the deed was intended to convey, and needed no correction. 1 Rich., 139.

2. That the decree in equity, made June Term, 1855, ordering the Commissioner to make title to Esau Price for the 100 acres left out of the deed from Phelps, enured to the benefit of the mortgagee, and had the effect of investing Price with the title to said 100 acres, at date of the deed, the Court simply doing for the parties to the deed what they intended to do, and thought had been done when it was executed.—*Thompson* vs. *Peake*, 7 Rich., 353 ; *Wiley, Banks & Co.* vs. *Lawson*, 7 Rich., 152.

3. That the fact of the mortgage having been recorded before the assignment to Bobo, and that the tract of 464 acres covered by it was twice sold soon after said assignment by the Sheriff as the property of Esau Price, without objection or notice from said Price or Bobo of their claim to the 100 acres, gave to Benjamin Price, who bought the equity of redemption, and complied with the terms of the last sale, a good title to the said 464 acres, as against Esau Price or any one claiming under him.—*Haily* vs. *Curry*, 3 Strob., 100 ; *Cox* vs. *Buck*, 3 Strob., 367.

4. That the proceedings by bill in equity for foreclosure of said mortgage, having been afterwards instituted, bringing into Court the said Esau Price, and all other parties who had any interest, or supposed interest, in the mortgaged premises as defendants, and of which proceedings the said Bobo, as counsel and assignee of Esau Price, had the fullest knowledge, and a decree having been made on the 7th of June, 1856, by consent of defendants, for the sale of the mortgaged premises, the plaintiffs are estopped from disputing the title of the defendant in the present action, who derives his title from said sale.—Bail. Eq., 284 ; *Henderson* vs. *Kenner*, 1 Rich., 478 ; 4 Kent, 6th Ed., 98 ; Kerr on Fraud and Mistake, 95, 127.

June 19, 1873. The opinion of the Court was delivered by

WILLARD, A. J. The action was trespass to try titles. The only questions presented by the record arise upon two propositions of law submitted to the jury. The matters set forth in the 1st, 4th, 5th and 6th grounds of appeal do not appear to have been the subject of

any proposition submitted to the jury, nor of any request to charge, and consequently they cannot be considered at the present time. The 2d and 3d grounds of appeal will be considered as embracing exceptions duly taken.

The 2d ground is based upon an instruction to the jury "that the order of the Court of Equity for the conveyance of the 100 acres, left out by mistake, in the original deed from Phelps to Esau Price, enured to the benefit of the mortgagee, and those claiming under him." E. Price purchased from Phelps and gave back a mortgage for the purchase money. Phelps' deed, by mistake, omitted part of the land intended to be conveyed, but the land was described in Price's mortgage. Subsequently the mistake was corrected by proceedings in equity, which resulted in a decree directing the Commissioner to convey to E. Price. That conveyance was never actually made, but, in consequence of the intervention of a creditor of Price, the land was actually conveyed by the Commissioner to S. Bobo, the assignee of E. Price, and by him conveyed to the plaintiffs.

Had the Commissioner conveyed to Price, as the decree in its original form directed, Price would have been in the same position, as it regards the mortgagee, as if he had acquired the land by deed from Phelps subsequent to the execution of the mortgage, with recitals in the deed showing that it was intended as a correction of a mistake in the original deed. He would, in that case, have held the land subject to the mortgage, under the estoppel, resulting from his attempt to embrace it within the lands mortgaged. The plaintiffs' title rests upon the legal rights of Price's creditor, which cannot exceed those of Price himself, and accordingly the lands in the hands of the plaintiffs were charged with the mortgage precisely as they would have been had they passed into the actual possession of Price. The proposition charged as above stated does not differ substantially from that just presented, and is free from error.

The third ground of appeal presents the instruction "that the plaintiffs were concluded by the proceedings in equity in which Webber was complainant, and E. Price and others defendants, from disputing the title of defendant derived from the sale under the decree in that case." This charge is to be understood as holding that the proceedings in equity so bound the plaintiffs that they could not aver against it. In this respect it is erroneous. The decree referred to could not directly bind the plaintiffs, because neither

they nor their grantors were made parties to it. To whatever extent they may have been bound by the mortgage, their rights could not be directly concluded by the procedings to foreclose the mortgage unless they were parties to it, or unless their title, or that of their immediate grantor, was derived subsequently to the decree from one bound by it. This .was not the case, for the assignment to S. Bobo, under which the rights of the plaintiffs, as against E. Price, are to be tested, was anterior to the filing of the bill by Webber. It was, therefore, necessary that S. Bobo should have been made a party to the bill in order to give the decree direct binding effect upon the plaintiffs.

As the case stands before us, we are compelled to infer that the verdict for the defendant stood wholly on the proposition embraced in this exception. To hold that the plaintiffs were directly bound by the proceedings in foreclosure was to conclude them from disputing it as stated by the Court, and would entitle the defendant to his verdict, irrespective of any other question in the case. The question of title, so far as it related to the facts, was, in effect, withdrawn from the jury by the instruction of the Court.

A new trial must be granted.

*Moses*, C. J., and *Wright*, A. J., concurred.